06 - CV - 00411

—

# Exhibit H

## to Plaintiff's Suggestions in Opposition
## to Defendant's Motion for Summary Judgment

—

## Affidavit of Anne Marie Hunter

## Affidavit of Anne Marie Hunter

COMES NOW Anne Marie Hunter, having first been duly sworn, upon her oath, and states as follows:

1. I did not know that there was a grate missing in the floor at the Durr Plant in Montgomery, Alabama until I fell through the opening.

2. Bruno Welsch warned me to be cautious of the robotic arms in the paint booth, as they moved very quickly and were very strong.

3. When Christian Rathsack took me into the Paint Booth, a car body sat atop and concealed from view the area where the grate was missing.

4. The car body was about fifteen (15) feet long and each grate was about three and a half to four (3 ½ to 4) feet long.

5. When I was taking photos of the emu feathers, I was facing away from the car body that concealed from view the area where the grate was missing.

6. Once Mr. Rathsack activated the robotic paint booth, things happened very quickly and simultaneously. For instance:

    a. The car body that was concealing the area where the grate was missing began to move forward (toward the moving robotic arms that Mr. Welsch had warned me to beware of);

    b. Another car body began coming towards me from behind, so I had to move forward so as not to be run over;

    c. The robotic arms in front of me began swinging about and spraying paint; and

    d. I had to take my photographs while following the car body in front of me toward the moving robotic arms;

  e. Very little time elapsed between Mr. Rathsack starting the robotic arms and my fall - only a matter of seconds. During almost the entirety of that time, the car body concealed the fact that there was a grate missing;

  f. Even after the car bodies started moving forward, the car body in front of me continued to conceal the fact that there was a grate missing, because the length of the car body was much longer than the length of the missing grate;

  g. While taking photographs in the robotic paint booth, I followed the car body in front of me and tried to stay as close to it as possible - close enough to reach out and touch it with my hand. However, the distance I was from the moving car body would vary by a few feet since it was constantly moving and I would stop for a second or two (just long enough to set down my tripod and snap a few photographs) before moving forward again, following the car body in front of me;

  h. Since the car body in front of me was always moving, when I moved forward with my tripod and equipment, I tried to set my tripod down as close to the car body as possible, since it would continue to move forward while I was placing my tripod on the floor and getting prepared for the next shot.

7. The grids that formed the "floor" of the paint booth formed, as far as I could see, a smooth, continuous, and uninterrupted plane. Not a single grid was missing (except for the one that was concealed from view by the car body). In fact, I have carefully reviewed each and every photograph that I took while in the robotic paint booth, and it is impossible to determine with any certainty that any photograph shows that a grate was missing.

8. When Mr. Rathsack started up the paint booth, the car body in front of me, that I was taking photographs of, moved forward in a steady and smooth fashion, giving no indication that something beneath it was missing or malfunctioning.

9. The grid system that formed the "floor" of the paint booth was of a uniform neutral color and each grid consisted mostly of empty space (i.e., you could see through it). And, what you saw when you looked through the grids was a background of that same neutral color. In other words, it was not at all the same as there being a hole in a solid floor. Further, there was no contrast between the color of the grids and the color of what was seen when one looked through the grids.

10. The day following the accident, Mr. Rathsack stated to me that he was the cause of my having been injured.

State of Missouri   )
                    ) ss.
County of Clay      )

Anne Marie Hunter, having been first duly sworn, upon her oath, states that she has read the above and foregoing Affidavit, she has personal knowledge of the facts and statements contained therein, and the facts and statements contained therein are true and accurate.

                                                Anne Marie Hunter

Subscribed and sworn to before me, a Notary Public in and for Clay County, Missouri, this 5th day of March, 2007.

                                                Carole Cantrell
                                              Notary Public