# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ANNE MARIE HUNTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:06-cv-0411-SRW** |
| | ) | |
| **DURR SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## EVIDENTIARY SUBMISSION IN SUPPORT OF
## DEFENDANT DURR SYSTEMS, INC.'S
## MOTION FOR FINAL SUMMARY JUDGMENT

Defendant Durr Systems, Inc., by and through its undersigned counsel, and pursuant to this Court's Civil Administrative Procedures, files the following in support of its Motion for Final Summary Judgment:

Exhibit A:    Deposition testimony excerpts of Anne Marie Hunter

Exhibit B:    Affidavit of Scott Matthew Wagner

Respectfully submitted,

s/James B. Carlson
James B. Carlson
Christopher A. Bottcher
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:    (205) 930-5100
Fax:    (205) 930-5335
E-mail:  jcarlson@sirote.com
E-mail:  cbottcher@sirote.com
Attorneys for Defendant
Durr Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas E. Hankins
Hankins & Conklin, P.C.
6812 North Oak Trafficway, Suite 5
Gladstone, MO 64118
Telephone:  816-436-3100
Facsimile:  816-436-8643
E-mail:tomhankinslaw@cs.com
*Attorney for Plaintiff, Anne Marie Hunter*

s/James B. Carlson
Of Counsel

# EXHIBIT "A"

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3                    AT MONTGOMERY

4

5    ANNE MARIE HUNTER,

6              Plaintiff,

7    vs.

8    DURR SYSTEMS, INC.,

9              Defendant.

10

11   CASE NUMBER:  2:06CV411-SRW

12

13

14        DEPOSITION:  ANNE MARIE HUNTER

15

16

17             S T I P U L A T I O N S

18        IT IS STIPULATED AND AGREED by

19   and between the parties through their

20   respective counsel that the deposition

21   of ANNE MARIE HUNTER may be taken on

22   October 5, 2006, before Sallie NeSmith

23   Gunter, Certified Shorthand Reporter,

1

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205) 978-2310  southerncourtreporting@charter.net

1   Commissioner and Notary Public, at the

2   law offices of Sirote & Permutt, P.C.,

3   2311 Highland Avenue South, Birmingham,

4   Alabama.

5       IT IS FURTHER STIPULATED AND

6   AGREED that the signature to and the

7   reading of the deposition by the

8   witness is waived, the deposition to

9   have the same force and effect as if

10  full compliance had been had with all

11  laws and rules of court relating to the

12  taking of depositions.

13      IT IS FURTHER STIPULATED AND

14  AGREED that it shall not be necessary

15  for any objections to be made by

16  counsel to any questions except as to

17  form or leading questions, and that

18  counsel for the parties may make

19  objections and assign grounds at the

20  time of trial or at the time said

21  deposition is offered in evidence or

22  prior thereto.

23

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

```
 1              A P P E A R A N C E S

 2    Appearing for the Plaintiff:

 3         HANKINS & CONKLIN, P.C.

 4         By:  Thomas E. Hankins, Esq.

 5         6812 North Oak Trafficway

 6         Suite 5

 7         Gladstone, Missouri  6411-82587

 8    Appearing for the Defendant:

 9         SIROTE & PERMUTT, P.C.

10         By:  James B. Carlson, Esq.

11         By:  Kim Thomason, Esq.

12         2311 Highland Avenue South

13         Birmingham, Alabama  35205

14    Court Reporter:  Sallie NeSmith Gunter

15

16

17

18

19

20

21

22

23
```

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1                    I N D E X

2

3    Examination by Mr. Carlson............7

4    Defendant's Exhibit 1

5    (E-mail from Anne Marie Hunter to

6    Leanna Schaffer)......................34

7    Defendant's Exhibit 2 (Photo)........63

8    Defendant's Exhibit 3 (Photo)........63

9    Defendant's Exhibit 4 (Photo)........68

10   Defendant's Exhibit 5

11   (Document authored by Plaintiff - Items

12   for Deposition)......................138

13   Defendant's Exhibit 6

14   (March 31, 2006, letter authored by

15   Dr. Howard A. Aks)...................138

16   Defendant's Exhibit 7

17   (2002 Tax Return of Plaintiff)......181

18   Defendant's Exhibit 8

19   (2003 Tax Return of Plaintiff)......182

20   Defendant's Exhibit 9

21   (2004 Tax Return of Plaintiff)......185

22   Defendant's Exhibit 10

23   (Letter dated February 25, 2005, from

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Hermes Landscaping to Jim

2    VanValkenburg).....................186

3    Defendant's Exhibit 11

4    (Letter dated March 14, 2005, from Jim

5    VanValkenburg to Plaintiff).........187

6    Defendant's Exhibit 12

7    (Undated letter from David Jewell to

8    Jim VanVelkenburg)..................188

9    Defendant's Exhibit 13

10   (Letter dated February 16, 2005 from

11   Plaintiff to Dave Ciuffoletti)......189

12   Defendant's Exhibit 14

13   (Letter dated August 26, 2005, from

14   Bruce Hartman to Plaintiff and other

15   assorted document)..................185

16   Defendant's Exhibit 15

17   (Invoice dated February 14, 2005, from

18   Plaintiff to Durr Industries).......213

19   Defendant's Exhibit 16

20   (Undated portion of letter from

21   Plaintiff)..........................213

22

23

**SOUTHERN COURT REPORTING**
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  up to date?

2      A.     Then from 19 approximately --

3  yes, because I've only been a

4  photographer for -- I mean, I've had no

5  other jobs for quite a while so --

6      Q.     How long had you been what I

7  would refer to as a freelance

8  photographer?

9      A.     I've always been freelance.

10 I've never had a full-time photography

11 position.  I've always been

12 self-employed as a photographer.

13     Q.     Okay.  If I was to ask how you

14 would characterize your kind of work or

15 characterize yourself in January of '05

16 when this incident occurred, how would

17 you characterize who you were or the

18 kind of work you did?  For instance, if

19 I was driving trucks, I would say I was

20 a truck driver, or if I was an

21 underground miner, I would maybe say

22 I'm this in an underground mining

23 situation.  How would you characterize

09:17:30AM

09:17:40AM

09:17:50AM

09:18:04AM

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    your profession and yourself at the

2    time this incident occurred?

3         A.    As a commercial photographer,

4    I would characterize myself as an

5    industrial photographer; and for my                   09:18:22AM

6    fine art work, I would say I'm a

7    landscape and floral photographer.

8         Q.    At the time you went to Durr

9    to do this photo shoot, would you have

10   been an industrial photographer in that         09:18:38AM

11   setting?

12        A.    Yes.

13        Q.    Okay.  And how long had you

14   been doing industrial-type photography?

15        A.    Since 1996.                                 09:18:50AM

16        Q.    Had you ever worked for Durr

17   on any of their other projects?

18        A.    Many, many, many, times since

19   1997 was the first time I worked for

20   them.                                                  09:19:06AM

21        Q.    Had you worked in a paint

22   facility similar to the one you were

23   shooting in on the day of this

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1        Q.    Okay.

2        A.    That is --

3        Q.    You say that didn't come from

4    you?

5        A.    No, it did not, Scout's honor.        09:34:48AM

6        Q.    But you agree with the part

7    that you're a self-employed freelance

8    photographer?

9        A.    That part, yes.

10       Q.    Do you have contracts with         09:35:00AM

11   other industries for whom you have shot

12   pictures?

13       A.    The one I know for sure that

14   is on file right now is with

15   Harley-Davidson.  I've worked with them      09:35:10AM

16   since 1996.

17       Q.    Okay.  You worked in the

18   capacity of an independent contractor

19   with Harley?

20       A.    Yes.                               09:35:22AM

21       Q.    And would that be the same for

22   Durr?

23       A.    Yes.

47

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    In the freelance shooting that

2  you did for Harley, it's my

3  understanding, and you correct me if

4  I'm wrong, that you shot that facility

5  from the ground up --                                    09:35:42AM

6    A.    Correct.

7    Q.    -- as it was being built?

8    A.    Yes.

9    Q.    Okay.  So by the time you get

10  to Durr, you're pretty familiar with          09:35:50AM

11  industrial settings?

12    A.    Correct.

13    Q.    And in particular in the

14  Harley case, that project was not

15  completed during much of the                     09:36:02AM

16  photography that you shot?

17    A.    I'm sorry, what?

18    Q.    Much of that facility was in

19  progress, that is, it was being built

20  and not completed during your shoots?       09:36:10AM

21    A.    It -- I shot for that facility

22  from the groundbreaking through

23  production, through -- I mean, I'm

48

## SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  still shooting for them -- I still was

2  shooting for them.

3      Q.    Are you still shooting for

4  them now?

5      A.    No, I haven't shot for them          09:36:26AM

6  since this accident.  I consider myself

7  part of the Harley family, but no, I

8  have had no shoots for them since the

9  accident.

10     Q.    Do you have your own hog?            09:36:34AM

11     A.    I did.

12     Q.    But you sold it?

13     A.    I did.

14     Q.    That's the one you had the

15  accident on?                                  09:36:40AM

16     A.    I didn't have an accident on

17  my Harley.

18     Q.    Okay.  Let me get back to the

19  Harley setting.  It's true that you

20  were shooting pictures while that whole    09:36:48AM

21  facility was under construction?

22     A.    Yes.

23     Q.    Until it was completed?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1     A.    Yes.

2     Q.    So you were familiar with

3  being around industrial settings that,

4  for instance, were incomplete?

5     A.    Yes.                                         09:37:00AM

6           (Off-the-record discussion.)

7     Q.    (BY MR. CARLSON) There's

8  another reference in your medicals, and

9  I think it's Diveley's medicals, and

10  you can say it's true or not, but I'm    09:37:54AM

11  just poking around here.  It says --

12  the medical records go on to state that

13  "This work requires working on various

14  levels, climbing and holding photo

15  equipment."                                         09:38:06AM

16     A.    Yes.

17     Q.    So that would be true --

18     A.    Yes.

19     Q.    -- of your industrial shoots?

20     A.    Yes.                                        09:38:10AM

21     Q.    Would that accurately describe

22  the kind of work that you were doing at

23  Durr in January of 2005?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    A.    Yes.

2    Q.    So you were familiar with the

3 way it was set up?

4    A.    Yes.

5    Q.    And so does Christian open the          09:43:12AM

6 door and you walk in?

7    A.    Yes.

8    Q.    And do you take your bag and

9 your tripod and your camera with you?

10    A.    Yes.                                     09:43:20AM

11    Q.    And what are you wearing for

12 footwear on this occasion?

13    A.    Steel-toed boots that -- I

14 have lace-up steel-toed boots.

15    Q.    Are they smooth or cleated          09:43:30AM

16 bottoms?

17    A.    Cleated.

18    Q.    And then are you wearing a

19 jacket or is it just --

20    A.    I had on a sweater and jeans.          09:43:36AM

21    Q.    All right.  So you were in

22 there --

23    A.    A lot of times you -- a lot of

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1   accident yet?

2       Q.    No, I'm just asking you what

3   you did first.

4       A.    The first thing I did was to

5   walk in and scope things out.                              09:44:52AM

6       Q.    Let me stop there, and we'll

7   take it in small bites.  When you go in

8   to scope it out, is anything moving?

9       A.    No.

10      Q.    Okay.  But you've got some car   09:45:00AM

11  bodies in there?

12      A.    Yes.

13      Q.    And then you said something

14  about watching the robots?

15      A.    Right.                                           09:45:06AM

16      Q.    Are the robots moving?

17      A.    No.

18      Q.    So what is it that you're

19  trying to do, with nothing moving, in

20  order to determine what kind of shots     09:45:16AM

21  you want to make?

22      A.    I'm seeing if I want my --

23  what my lens is that I need, can I

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1 handle it or do I need to just keep it

2 on the tripod, just a lot of technical

3 things.

4     Q.   No one from Durr is telling

5 you how to do those things?        09:45:34AM

6     A.   No, no one is telling me.

7     Q.   You're the professional in

8 this setting?

9     A.   Right.

10     Q.   All right.  Before you   09:45:38AM

11 actually start taking pictures, does

12 anything move?

13     A.   As soon as -- yeah.  As soon

14 as -- I'm waiting for the bodies to

15 start moving, and I don't start taking   09:45:54AM

16 pictures until the bodies start moving.

17 Then a body moves forward, then I start

18 to move forward, and I follow its line,

19 get as close as I can without putting

20 myself in danger of getting sprayed   09:46:04AM

21 with paint so --

22     Q.   Let me stop you there.  Had

23 you had a discussion with someone about

59

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1      Q.    Okay.

2      A.    Also because I use a really

3  fast speed of film and my shutter speed

4  doesn't have to be that long, and

5  because I've done this for so long, and          09:51:18AM

6  this is what I do, and I make good

7  pictures like this, really good, not

8  extreme photography but --

9      Q.    All right.  Let's work off of

10  Defendant's Exhibit 2.  Did you shoot          09:51:30AM

11  more than one direction in the robot

12  paint booth on this occasion where the

13  accident occurred?

14      A.    Yes.

15      Q.    Did you get at one end and set          09:51:48AM

16  up and shoot --

17      A.    No, I --

18      Q.    -- and then go to the other,

19  how did it work?

20      A.    When I first came in, I          09:51:56AM

21  stopped right there, and I turned

22  around and got these feathers and some

23  shots going back down the line from

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  behind me.  And then I waited for the

2  body in front of me to start moving and

3  then there was another body in front

4  for when the robot started to paint,

5  and then I started to walk forward.          09:52:14AM

6       Q.    Okay.  And is that when your

7  accident happened?

8       A.    Uh-huh.

9       Q.    Yes?

10      A.    Yes.                                09:52:20AM

11      Q.    Okay.

12      A.    Sorry.

13      Q.    Can you see in Defendant's

14 Exhibit 2 where you started before you

15 followed the car?                             09:52:28AM

16      A.    I'm pretty sure that it's

17 right -- like the exit door is right

18 here (indicating) after the emu

19 feathers.

20      Q.    And that's where you came in?      09:52:40AM

21      A.    Uh-huh, enters and exits,

22 right.

23           MR. CARLSON:  Have you got a

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1   couple of these photographs?

2          MR. HANKINS:  That's the only

3   one I brought.  Do you want to make

4   some copies so we can mark them?

5          MR. CARLSON:  Yeah, let's do          09:52:54AM

6   that.  Let me see if we've got one

7   here.  We may well have one here, Tom.

    Let's use it to save us a little time.

9          MR. HANKINS:  Okay.

10          (Off-the-record discussion.)          09:54:24AM

11      Q.   (BY MR. CARLSON) Take a look

12   at this assortment of pictures, Ms.

13   Hunter, and see if we can find one that

14   works.  There's a series of them there

15   that look similar.                           09:54:40AM

16      A.   Right.

17      Q.   Can you commit to any one of

18   those photographs?

19      A.   Well, do you mean if I took

20   them?                                        09:54:50AM

21      Q.   No, that it fairly and

22   accurately depicts the area where your

23   injury occurred?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1       A.      Yeah (indicating).

2       Q.      Let's go with what works.

3       A.      Okay.

4       Q.      All right.  Can we work with

5   the one you just pointed to?                        09:55:00AM

6       A.      Okay.

7               (Defendant's Exhibit 4 was

8               marked for identification.

9               A copy is attached.)

10      Q.      (BY MR. CARLSON) It would be            09:55:04AM

11  the bottom photograph on Defendant's

12  Exhibit 4, correct?

13      A.      Yes.

14      Q.      All right.  Why don't we do

15  this?  You came in on one side of the               09:55:12AM

16  robotic paint booth, and then prior to

17  following a car through the paint

18  booth, you get prepared to take those

19  shots, correct?

20      A.      Correct.                                09:55:26AM

21      Q.      Do you set your tripod up in a

22  stationary location to take the first

23  shot?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1        A.    Usually what I do --

2        Q.    What I need to know is what

3   you did on this occasion.

4        A.    Okay.  What I did, which is

5   what I always do, is I put the two back          09:55:40AM

6   legs on these (indicating).

7        Q.    Okay.

8        A.    And then I -- the front leg

9   has almost a big enough rubber thing

10  not to go through.  Sometimes it will            09:55:52AM

11  go through the grate a little bit,

12  sometimes it doesn't.  But if it

13  doesn't, it gets a little bit stuck,

14  that's okay, I can just pull it out and

15  keep going.                                      09:56:02AM

16       Q.    Why don't you, if you would,

17  just use this black felt tip and draw

18  your tripod where you started.

19       A.    I don't know.  I don't know.

20       Q.    Did you start in the area that      09:56:32AM

21  we see in that bottom photograph on

22  Defendant's Exhibit 4?

23       A.    Okay.  I think what I did was

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    You take --

2    A.    -- in with me to show me the

3  emu feathers.  He came in, but he

4  didn't come in all the way, and he

5  said, Behind you, we brush the bodies

6  off with emu feathers.  And I go, Well,        09:58:46AM

7  I'll take some pictures of those before

8  the bodies start coming up and then --

9    Q.    Let me stop you there so we

10 can get this maybe one time.                    09:59:02AM

11   A.    All right.

12   Q.    Before you do anything that is

13 related to your accident, you step

14 back, as we see in Defendant's Exhibit

15 4, the bottom picture --                         09:59:08AM

16   A.    Uh-huh.

17   Q.    -- and shoot the emu feathers?

18   A.    Right.

19   Q.    And Christian came in and he

20 showed you those, and then you decided          09:59:14AM

21 to take some pictures of the emu

22 feathers?

23   A.    Right.

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    All right.  Then you said at

2  that point there are cars behind you?

3    A.    Right.

4    Q.    And is that as you're looking

5  at these emu feathers?

6    A.    Yes.                                          09:59:30AM

7    Q.    Okay.

8    A.    But the car was not moving

9  yet.

10   Q.    Good.                                         09:59:34AM

11   A.    I've been hit by a car before.

12  I've been hit by a robot before.

13   Q.    All right.  Tell me what you

14  do next.

15   A.    Christian says the bodies are   09:59:44AM

16  going to be coming, I need to go

17  outside.  I said that I will go

18  forward, and after I did emu feathers,

19  he went out, and I walked forward to

20  start the body, and then a body came    09:59:56AM

21  up --

22   Q.    Wait, wait, wait.  You walked

23  forward, you walked forward and did

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  what?

2       A.    Nothing.   I moved away, a body

3  was coming up.

4       Q.    Okay.

5       A.    Christian said --

6       Q.    As you look at Defendant's

7  Exhibit 4 in the bottom --

8       A.    Yes.

9       Q.    -- would that car that we see

10 be coming towards you?

11      A.    No, that's going away from me.

12      Q.    It's one from behind you

13 that's coming up?

14      A.    Correct.

15      Q.    Got you.

16      A.    So Christian said that they're

17 coming, so I stepped aside to let it

18 go.  And then he said, Are you ready?

19 He left to go operate the computer

20 outside.  I got back on here, started

21 walking.  The first body was here

22 getting ready to get painted, and I

23 went up to there to set up.

10:00:06AM

10:00:12AM

10:00:16AM

10:00:26AM

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205) 978-2310 southerncourtreporting@charter.net

1    Q.    Let me just -- I know this is

2  kind of tedious, but for me to

3  understand what you're talking about

4  and so the record makes sense, I just

5  want to go back over it a little bit

6  and see if I've got the sequence

7  correct, okay?

8    A.    Okay.

9    Q.    You and Christian go into the

10  robotic paint booth, and he shows you

11  where the emu feathers are?

12    A.    Uh-huh.  He just wanted to

13  point out that was something new

14  that -- particular to this plant that

15  no one else had done before.

16    Q.    All right.  And then because

17  you learned it was new, did you decide

18  maybe I ought to take a picture of

19  those?

20    A.    Yes.

21    Q.    And you take that picture as

22  you're facing in the bottom of

23  Defendant's Exhibit 4, and then he

10:00:44AM

10:00:50AM

10:01:02AM

10:01:10AM

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1  says, I'm going to move some cars, and

2  you step to the side?

3       A.   He didn't have the control to

4  move the cars.  The cars -- he didn't

5  control the cars moving.  He probably      10:01:24AM

6  controls the robots painting the cars.

7  The cars were coming from down line

8  somewhere, they were going through

9  production.

10      Q.   Does he tell you a car is         10:01:32AM

11 coming?

12      A.   Yes.

13      Q.   Okay.  So you get off to the

14 side?

15      A.   Right.                            10:01:36AM

16      Q.   And does that car pass you?

17      A.   Yes.

18      Q.   And is Christian outside the

19 robotic paint booth?

20      A.   Yes.                              10:01:44AM

21      Q.   In the control panel area?

22      A.   Yes.

23      Q.   All right.  So this car that

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1   was coming behind you is now in front

2   of you?

3        A.   Correct.

4        Q.   And does that car stop?

5        A.   Yeah.  They always stop for a          10:01:52AM

6   minute, then they start and then they

7   can stop, they start.  They're not --

8   sometimes they flow smoothly, sometimes

9   they don't.  But yes, that car stopped.

10        Q.   Do you know why it stopped?          10:02:02AM

11        A.   No.  There's numerous reasons

12   why they stop.

13        Q.   But you don't know why?

14        A.   Uh-uh.

15        Q.   Okay.  After that car            10:02:14AM

16   stopped --

17        A.   It's pretty typical, though.

18        Q.   What happens after that car

19   stops?

20        A.   Then I get back on here, start   10:02:20AM

21   walking up here (indicating) to get

22   ready to photograph these robots

23   painting some bodies.

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205) 978-2310 southerncourtreporting@charter.net

1    Q.    And that's the robots that you

2  see in the bottom photograph of

3  Defendant's Exhibit 4?

4    A.    Yes.

5    Q.    All right.  Now, before you          10:02:32AM

6  began doing your shoot, did you set

7  your tripod up?

8    A.    Yes.

9    Q.    Can you show me on that

10  Defendant's Exhibit 4, just straddle        10:02:46AM

11  that thing and put your tripod in

12  there, go ahead and draw it in there.

13    A.    Yes.

14    Q.    Go ahead and draw some legs to

15  it so I know I'm not just looking at        10:02:54AM

16  dots.

17    A.    (Witness complies.)

18    Q.    All right.  And your camera is

19  mounted on the tripod?

20    A.    Yes.

21    Q.    And what happens next?            10:03:04AM

22    A.    Then the bodies start moving

23  and the robots start painting, and I

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  get quite a few shots of that first

2  body.  Then I start following it, I

3  lift up my tripod, start walking

4  forward to get as close as I can, get

5  some really close shots, set it down          10:03:24AM

6  again maybe a little bit further.  My

7  foot slips, I look down, I think I'm

8  going to get killed.

9       Q.    Okay.  Let me stop and rewind

10  the tape.  You taken some shots from      10:03:36AM

11  where you have drawn the tripod --

12       A.    Uh-huh.

13       Q.    -- on Defendant's Exhibit 4?

14       A.    Uh-huh.

15            MR. HANKINS:  Yes?          10:03:44AM

16       Q.    Yes?

17       A.    Yes.

18       Q.    And are the robots at this

19  station painting the inside of the car

20  or the outside?                            10:03:52AM

21       A.    It's a top coat.

22       Q.    It's a top coat?

23       A.    Uh-huh, but it goes inside.  I

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1      Q.    Right.  So you shoot some

2   shots, but the car is gradually moving

3   away from you?

4      A.    Yes.

5      Q.    All right.  Then you pick up            10:04:44AM

6   your tripod and you start walking

7   towards the car?

8      A.    Yes.

9      Q.    And do you ever set your

10  tripod down again?                               10:04:50AM

11     A.    Yes.

12     Q.    And --

13     A.    That's what saved my life.

14     Q.    Well, you set the tripod down,

15  and you take some more shots?                    10:05:00AM

16     A.    Uh-huh.

17     Q.    Yes?

18     A.    Yes.

19     Q.    And how many shots do you take

20  at that location?                                10:05:04AM

21     A.    Well, when I set my tripod

22  down when my foot slipped, I hadn't

23  take one shot yet.  When I picked it up

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1   at the time -- I might have moved two

2   or three times, but the time that I

3   picked it up and my foot slipped, I put

4   it down.  As I was putting it down, my

5   foot slipped and I looked down, and I          10:05:30AM

6   was headed down.  And if it wasn't for

7   my tripod hooked up over here, I would

8   have fallen through that hole.

9        Q.    Okay.  Do you think you set up

10   your tripod one, two, or three times      10:05:42AM

11   before this accident occurred?

12        A.    I don't know.  Maybe a couple,

13   maybe three.

14        Q.    Okay.  And in each of those

15   settings, with the exception of the       10:05:54AM

16   last, did you take pictures from the

17   tripod?

18        A.    Yes.

19        Q.    And on the third time --

20        A.    Or maybe the fourth.           10:06:02AM

21        Q.    Okay.  Anyway, on the last

22   one --

23        A.    It was at the most that

81

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  probably.

2       Q.    On the last one, do you get

3  your tripod established and firmly set?

4       A.    No.   I am setting it down

5  trying to get it locked into the sides          10:06:14AM

6  and my foot slips.   And as my foot

7  slips, my tripod locks down onto the

8  sides, and that is what I used to pull

9  myself up so I wouldn't go through that

10  hole.                                           10:06:30AM

11       Q.    Okay.   At the time that you

12  set your tripod up in front of that

13  hole, how far was the tripod from the

14  hole?

15       A.    I don't think we can say that        10:06:42AM

16  I set it up.   I was in the process of

17  setting it up.

18       Q.    And where you were setting it

19  up?

20       A.    And the hole is here and the         10:06:48AM

21  tripod would have, once again, gone

22  here on those rails for stabilizing it

23  (indicating).

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    But what I'm asking is this:

2  As you were trying to set up the tripod

3  in front of this hole, about how far

4  was your tripod from the hole?

5    A.    It straddled it probably.    10:07:06AM

6    Q.    Straddled the hole?

7    A.    Probably, yeah, because I

8  didn't see it.

9    Q.    Okay.

10    A.    So I'm walking with all my    10:07:14AM

11  gear and getting ready, okay, I want

12  this shot, set my tripod down, take a

13  step, my tripod locks down or sets down

14  on these (indicating), my foot slips.

15  I look down, and there's death,    10:07:28AM

16  seriously.

17    Q.    What did your foot slip on?

18    A.    It slipped into the hole.  I'm

19  walking on this (indicating), and my

20  foot slips into the hole.    10:07:42AM

21    Q.    Okay.  While you're setting up

22  your tripod?

23    A.    While I'm carrying my tripod,

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1    please?

2         Q.    Sure.   I'm not trying to trick

3    you but it's --

4         A.    I normally walk here.   I don't

5    walk over here (indicating).

                                                     10:08:36AM

6         Q.    Right.   And when you say

7    you're walking here, you're walking on

8    the grates where you've shown the

9    tripod straddling in Defendant's

10   Exhibit 4?

                                                     10:08:46AM

11        A.    Right.

12        Q.    Okay.   Here's all I'm asking:

13   Would it be fair to say on either side

14   of that area that you were walking on,

15   it dropped off at least a foot?

                                                     10:08:54AM

16        A.    Yes.

17        Q.    On both sides?

18        A.    Yes.

19        Q.    Okay.   All I'm trying to

20   establish is it's not a level floor,

21   you're walking up on kind of a catwalk?

                                                     10:09:00AM

22        A.    I think catwalks are defined

23   much higher.   I wouldn't say that.

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1  I've been on catwalks.  That's just a

2  floor for the bodies to pass on.  Yeah,

3  I mean, if you call a foot drop-off a

4  catwalk, but I wouldn't call it that.

5      Q.   I understand that, but I'm

6  just trying to say it does elevate --

7  it's elevated in that area, a foot on

8  both sides?

9      A.   Okay.  Yes.

10     Q.   Okay.  Now, when you're

11 setting down your tripod that last

12 time, it sounds to me, and you correct

13 me if I'm wrong, that the legs of the

14 tripod are overreaching and going

15 outside the confines of what I call the

16 catwalk?

17     A.   No.

18     Q.   Or were you able to get the

19 legs of the tripod on the outer edges

20 of that catwalk?

21     A.   They were right here

22 (indicating).

23     Q.   Just like you've drawn it?

10:09:16AM

10:09:24AM

10:09:42AM

10:09:52AM

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1        A.    Uh-huh.

2        Q.    Only further down?

3        A.    Uh-huh.

4        Q.    Yes?

5        A.    Yes.                                    10:10:00AM

6        Q.    Okay.  And just so I

7    understand, when you stepped in the

8    hole, you were in the process of

9    putting your tripod in place --

10       A.    Yes.                                    10:10:10AM

11       Q.    -- to take these pictures?

12       A.    Yes.

13       Q.    And when you put your foot in

14   the hole, were the legs of the tripod

15   in contact with the floor?                        10:10:16AM

16       A.    It probably happened

17   simultaneously.

18       Q.    Simultaneously.  Now, at that

19   point in time, how far is the car that

20   you're photographing in front of you,            10:10:26AM

21   how far away is it?

22       A.    Ten feet maybe.

23       Q.    Okay.  And that's from your

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    tripod to the rear end of the car?

2        A.    Yeah.

3        Q.    Okay.  Was there anything

4    obstructing your view of the hole in

5    the floor at the time you were setting          10:10:46AM

6    this tripod up and you stepped in the

7    hole?

8        A.    No.  I wasn't looking for a

9    hole in the floor, so I wouldn't have

10   seen it.                                          10:10:56AM

11       Q.    Okay.  But what I'm asking,

12   there wasn't anything between you and

13   that car that would have kept you from

14   seeing that hole, is there?

15       A.    At the point of -- yes, my        10:11:02AM

16   gear probably.

17       Q.    What gear?

18       A.    My camera bag, my tripod, my

19   camera, my film bag were all around me,

20   and so I would have expected the floor    10:11:16AM

21   to be there.

22       Q.    I'm not asking what you

23   expect.  I'm asking you, was there

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1  anything blocking your visual view of

2  the floor area where that grate was

3  missing?

4      A.    I wasn't looking at the floor.

5      Q.    All I'm asking you, was there          10:11:42AM

6  anything blocking your view of that

7  hole at that time?

8      A.    My camera and tripod take up

9  this much space in front of me

10 (indicating), and I needed -- I was          10:11:56AM

11 concentrating on the robots painting

12 and the shot I wanted to get. So in

13 essence, yes, the answer is yes, I was

14 looking at something other than the

15 floor.                                         10:12:08AM

16     Q.    Well, I understand you were

17 looking at something other than the

18 floor. Was there anything to prevent

19 you from looking at the floor where

20 that hole was?                                 10:12:16AM

21     A.    Yes. If I had looked down, I

22 would have not seen. I think my camera

23 and bag and everything would have

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1    obstructed me to see the floor maybe.

2        Q.    But you're not sure?

3        A.    I don't know for sure.

4        Q.    Because you were looking at

5    the robots as you were setting up the                10:12:30AM

6    tripod?

7        A.    Yes.

8        Q.    All right.  At the time you

9    were putting your tripod down, were you

10   looking through the lens of your camera           10:12:40AM

11   at the same time?

12       A.    No.

13       Q.    Really what you were doing is

14   you were setting the tripod up to

15   stabilize it --                                          10:12:50AM

16       A.    Yes, but what I was --

17       Q.    -- while looking at the

18   robots?

19       A.    But I was looking ahead,

20   forward.                                                  10:12:56AM

21       Q.    Okay.  But other than your

22   tripod, your equipment, there was

23   nothing between you and the car that

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1   would keep you from seeing the hole in

2   the floor, was there?

3       A.   No.

4       Q.   Okay.  In looking at

5   Defendant's Exhibit 4, can you see the          10:13:22AM

6   grate that you say was missing on this

7   occasion?  And if you need to look at

8   those other pictures, feel free to do

9   that.

10      A.   No.  When Christian picked it           10:13:50AM

11  up to put it back, I believe it was

12  just right over here in the corner.

13      Q.   On the left-hand side?

14      A.   Uh-huh.

15      Q.   Yes?                                     10:13:58AM

16      A.   Yes.

17      Q.   Okay.  And the car that you

18  were photographing or following at the

19  time of your accident, was it the same

20  color as the car we see in Defendant's          10:14:10AM

21  Exhibit 4?

22      A.   No, because they switched

23  paint colors two or three times while I

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    Okay.

2    A.    Because it wasn't -- I mean,

3  it wasn't a long time I was in there

4  before that happened.

5    Q.    Uh-huh.  And how many grates      10:15:24AM

6  were gone in the floor, as you

7  remember?

8    A.    Two.

9    Q.    At the time you actually

10  stepped your foot in that hole in the      10:15:50AM

11  floor, are you looking at the robots?

12    A.    Yes.

13    Q.    Was there anything in

14  particular that you were looking for

15  when you did that?      10:16:02AM

16    A.    I look for a lot of things

17  when I'm shooting.  I look for light, I

18  look for color, shape.  I also watch to

19  make sure the robots are not doing

20  something erratic, because they can in      10:16:22AM

21  a startup of a plant.  They always can.

22  I mean, that could be even during when

23  the plant could be going for cars and

**SOUTHERN COURT REPORTING**
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    shoot, I've never worked like I'm under

2    so much pressure, because I just can't

3    make good pictures like that.  So I'm

4    calm really on the inside, I'm just

5    doing my work very efficiently, just                    10:17:42AM

6    like almost like a ballet.  You know,

7    it's almost like a -- I've danced a lot

8    in my life, and that's kind of how I've

9    approached my photography is everything

10   has its time and, you know, I try to do            10:17:50AM

11   it gracefully and work efficiently.

12        Q.    Of the photographs that your

13   attorney has produced to me, are those

14   all of the photographs that you took on

15   this occasion?                                                   10:18:08AM

16        MR. HANKINS:   I don't think

17   she knows what I've produced.  I gave

18   him 145 photos, and you had --

19        A.    No, that is not all of the

20   pictures I took.                                                 10:18:22AM

21        MR. HANKINS:   You had -- what

22   do you call those cards that have like

23   30?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1           THE WITNESS:  Index.

2           MR. HANKINS:  Index cards.

3      Q.   (BY MR. CARLSON) I've got

4   about 145 pictures.  Do you think there

5   are more of this shoot that you did at        10:18:30AM

6   Durr?

7      A.   Yes.  There are more of the --

8   I cannot remember the name of it, but

9   it's this new process they have where

10  the bodies go in a 360 for one of their      10:18:46AM

11  coats, and maybe there are a few of

12  those that I didn't give you, which I

13  can provide.

14     Q.   Did you happen to find any

15  photograph that showed the missing        10:18:58AM

16  grate that you actually photographed?

17     A.   The only -- there isn't that.

18  The only -- I did not know the grate

19  was missing or I probably would have

20  photographed it.  The only thing I        10:19:12AM

21  photographed was Christian putting back

22  the grate while I was laying on the

23  floor.

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205) 978-2310 southerncourtreporting@charter.net

1      Q.    Okay.    And the only one you

2  took after the accident is the one with

3  Christian putting the grate back?

4      A.    Uh-huh, correct.

5      Q.    Yes.    All right.    When you          10:20:26AM

6  fell, you said your tripod saved you.

7  Tell me how that worked.

8      A.    Well, I held it really hard

9  and used it like to pull me out,

10 because there was really nothing to         10:20:44AM

11 stop me from falling into that hole,

12 it's pretty big.    It was locked down

13 right here on these white things, and

14 so I was able to pull myself out, and

15 then I had no control of myself at that       10:20:58AM

16 point.    I mean, I was just like trying

17 to save my life.    So I fell over and

18 fell really hard on this (indicating).

19     Q.    On the right-hand side?

20     A.    Uh-huh, on this is really --        10:21:12AM

21 on one of these is what I think I fell

22 on (indicating).    And right here -- can

23 I show you something?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA 35226
(205)978-2310 southerncourtreporting@charter.net

1    Q.    Sure, you can draw all over

2    your attorney's pictures.

3    A.    Okay.  This is where I fell

4    like into an area here, and then my

5    camera landed right here and stayed                10:21:28AM

6    (indicating).

7    Q.    On a step?

8    A.    My hand was there, like my

9    hand was extended, and my camera landed

10   then on top of my hand right there.  So      10:21:38AM

11   my hand got smashed between my camera

12   and this thing right here (indicating).

13   Q.    While you're drawing on that

14   photograph that we've marked

15   Defendant's Exhibit 2, you've made some      10:21:50AM

16   marks on the right-hand side of what

17   I've called the catwalk.

18   A.    Uh-huh.

19   Q.    I understand we've got a

20   dispute on what a catwalk is, but at         10:21:58AM

21   least we're talking the same language.

22   Is it your testimony that you fell to

23   the right-hand side where you've made

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

1    these black marks?

2         A.    Yes.

3         Q.    And it is your testimony that

4    your camera landed on the step that we

5    see in that photograph?                          10:22:10AM

6         A.    That's not -- yes, it did.

7    But it landed on my hand, while my hand

8    was on this step (indicating).

9         Q.    On the step.  Okay.  Do you --

10        A.    And the rest of my body was      10:22:20AM

11   like laying right here (indicating).

12        Q.    Do you actually fall down in

13   the hole?

14        A.    No.

15        Q.    Okay.  So basically, you hit    10:22:26AM

16   the side rail to the hole?

17        A.    Uh-huh.

18        Q.    Yes?

19        A.    Yes.

20        Q.    And your camera lands on your   10:22:32AM

21   wrist?

22        A.    Uh-huh.

23        Q.    Yes?

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

```
 1        A.    No.

 2        Q.    We've talked about all of it?

 3        A.    Yes.

 4        Q.    Okay.   And you're making a

 5   claim for lost wages, lost income, the        12:12:28PM

 6   pain, the medical bills.   Anything else

 7   that you're making claim for in this

 8   case?

 9        A.    The change in my profession.

10        Q.    Anything else that you can         12:12:46PM

11   think of?

12        A.    No.

13        MR. CARLSON:   All right.

14   Thank you very much for giving me your

15   time.                                         12:12:54PM

16        THE WITNESS:   Thanks.

17        MR. CARLSON:   And that's the

18   last question I have.

19        MR. HANKINS:   We'll read and

20   sign.                                         12:13:02PM

21     THUS CONCLUDED THE DEPOSITION OF

22            ANNE MARIE HUNTER

23
```

SOUTHERN COURT REPORTING
1600 WOODMERE DRIVE, SUITE A, BIRMINGHAM, ALABAMA  35226
(205)978-2310 southerncourtreporting@charter.net

```
 1              C E R T I F I C A T E
 2    STATE OF ALABAMA      )
 3    JEFFERSON COUNTY      )
 4         I hereby certify that the above
 5    and foregoing proceeding was taken down
 6    by me by stenographic means, and that
 7    the questions and answers therein were
 8    produced in transcript form by computer
 9    aid under my supervision, and that the
10    foregoing represents, to the best of my
11    ability, a true and correct transcript
12    of the proceedings occurring on said
13    date at said time.
14         I further certify that I am
15    neither of counsel nor of kin to the
16    parties to the action; nor am I in
17    anywise interested in the result of
18    said cause.
19
20    _____
21         SALLIE NESMITH GUNTER
22    CERTIFIED SHORTHAND REPORTER
23
```

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ANNE MARIE HUNTER,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CASE NO.: 2:06-cv-0411-SRW
                                      )
DURR SYSTEMS, INC.,                   )
                                      )
        Defendant.                    )

## AFFIDAVIT OF SCOTT MATTHEW WAGNER

STATE OF MICHIGAN )

COUNTY OF WAYNE   )

Scott Matthew Wagner gives this testimony after being duly sworn:

1.    My name is Scott Matthew Wagner.  I am over the age of nineteen (19) years, of sound mind, and I give this testimony based on my personal knowledge.

2.    I am employed as a Corporate Safety Officer at Durr Systems, Inc.  I am one of the custodians of certain records relating to Anne Marie Hunter's fall at the Hyundai facility in Montgomery, Alabama, on or about January 26, 2005.  One of these records is attached to my Affidavit as Attachment "1", which is a true and correct copy of an engineering drawing of the grate that was missing on the date of Ms. Hunter's fall.

3.    Durr Systems, Inc. maintains this document in the usual and ordinary course of its business, and it relies upon this document and others like it in the usual and ordinary course of its business.

4.    The grate that was missing on the date of Ms. Hunter's fall was five feet (5') long (1,524 mm), two feet one and nine-sixteenths inches (2' 1-9/16") wide (650 mm), and one and a quarter inches (1 1/4") high (30 mm).

5.    Attachments "2", "3", and "4" to my affidavit are true and correct copies of photographs that fairly and accurately depict the paint booth in which Anne Marie Hunter fell.

Further Affiant sayeth not.

_____
Affiant


Subscribed and sworn to before me this

_____ day of March, 2007.

_____
Notary Public

My Commission Expires: 11-17-2007

JENNIFER S. FORTIN
Notary Public, Wayne County, MI
My Commission Expires Nov. 17, 2007

2

# ATTACHMENT "1"



1 1/4" x 3/16'"
Type 30W4
Smooth Steel Bar
Grating, Banded,
Painted Black

GRATINGS :

WIDTH:    650 [mm]  ;  2'-1 9/16"
HIGHT:    30 [mm]  ;  1-1/4"
LENGTH:    1524 [mm]  ;  5'-0"

| Conveyor No | PC0682 | 65 pcs. |
|---|---|---|

| Conveyor No | PC1062 | 35 pcs. |
|---|---|---|
| Conveyor No | PC1096 | 35 pcs. |

| Conveyor No | PC1064 | 24 pcs. | Notice: |
|---|---|---|---|
| Conveyor No | PC1098 | 24 pcs. | The lenghts are counted without lenght of gratings in heated flash |

LENGTH TOLLERANCE: -1 [mm]  ;  -3/64"

# ATTACHMENT "2"







# ATTACHMENT "3"





# ATTACHMENT "4"









# ATTACHMENT "5"



