IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ANNE MARIE HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-cv-0411-SRW |
| ) | |
| DURR SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED FACTS**

Plaintiff was asked how she would characterize her kind of work or profession that she was performing on the day of the incident made the subject matter of this lawsuit. She stated that "As a commercial photographer, I would characterize myself as an industrial photographer". She had been doing industrial photography since 1996. She had worked for the Defendant, Durr, many times since 1997 and had also worked in paint facilities similar to the one where she was shooting photographs on the date of this incident. She was familiar with the set up. (Exhibit A, pp. 26, line 13, through 27, line 7.)

Plaintiff had previous experience as an industrial photographer in settings where she was in attendance from groundbreaking through construction to production. By the time she came to Durr on the occasion of her accident, she was pretty familiar with industrial settings and even those industrial settings that were incomplete. (Exhibit A, pp, 47, line 10, through 50, line 4.)

For purposes of doing her work at the Durr facility on the occasion of this incident, Plaintiff brought her own equipment, which included her own bag, tripod and camera, to take the photographs and wore lace-up steel toed boots. (Exhibit A, p. 56, line 8 through 17.)

By way of affidavit filed in opposition to Defendant's Motion for Summary Judgment, Plaintiff now attempts to state that an automobile concealed from view the area where the hole created by the missing grate was located. In her deposition, she was asked a series of questions with regard to what, if anything, blocked her view of this hole in the floor at the time of this incident.

> Q. All I'm asking you, was there anything blocking your view of that hole at that time?
>
> A. My camera and tripod take up this much space in front of me (indicating), and I needed - - I was concentrating on the robots painting and the shot I wanted to get. So in essence, yes, the answer is yes, I was looking at something other than the floor.
>
> Q. Well, I understand you were looking at something other than the floor. Was there anything to prevent you from looking at the floor where that hole was?
>
> A. Yes. If I had looked down, I would have not seen. I <u>think</u> my camera and bag and everything would have obstructed me to see the floor <u>maybe</u>. (Emphasis added.)
>
> Q. But you're not sure.
>
> A. I don't know for sure.
>
> Q. Because you were looking at the robots as you were setting up the tripod?
>
> A. Yes.
>
> Q. Alright. At the time you were putting your tripod down, were you looking through the lens of your camera at the same time?
>
> A. No.
> Q. Really? What you were doing is you were setting the tripod up to stabilize it - -
>
> A. Yes, but what I was - -

Q. - - while looking at the robots?

A. But I was looking ahead, forward.

Q. Okay. But other than your tripod, your equipment, there was nothing between you and the car that would keep you from seeing the hole in the floor, was there?

A. No.

(Exhibit A, pp. 89, line 5, through 91, line 3.)

Nowhere in Plaintiff's deposition testimony did she ever state that an automobile was concealing from view any hole in the floor at the time she actually stepped into the hole while setting up her tripod.

Paragraph 9 of Plaintiff's affidavit appears to be another excuse for not seeing an open and obvious hole in the floor. Nowhere in Plaintiff's deposition did she provide information with regard to the uniformity of a neutral color, grids consisting of mostly empty space and the appearance of the floor as being anything that kept her from seeing the space created by the missing grate. Plaintiff did take two photographs of the area where the grate was apparently missing after this incident occurred. (Exhibit A, pp. 96, line 14, through 97, line 4.) Durr has attached these photographs hereto as Attachment 5. As stated in Durr's original Memorandum of Law in Support of Durr System, Inc.'s Motion for Summary Judgment at paragraph 10, Plaintiff was actually setting her tripod down at the time she stepped into this hole, and that the tripod was actually straddling the hole into which she fell. When asked how far the car she was photographing was in front of her at the time she placed her foot in the hole while setting up her tripod, she said "Ten feet maybe". This was the distance from the tripod to the rear end of that car. (Exhibit A, pp. 87, line 6, through 88, line 2.)

Contrary to her affidavit, which would lead you to believe that she was much closer to the automobile than her ten foot judgment provided in deposition testimony, she was not so close as to be able to "reach out and touch it with my hand".

Without making any measurements, it is Plaintiff's judgment that each grate was about three and one-half (3-1/2) to four (4) feet in length. (See affidavit of Hunter at ¶ 4). Assuming, arguendo, that the Plaintiff is correct, and the vehicle she was photographing is approximately ten feet from her tripod, the hole created in the floor by the missing grate would have been in full view. Although the Plaintiff tries to argue that even if the grate was missing everything would have looked the same, the photographs she took of the missing grate clearly prove otherwise. At one point in her deposition, Plaintiff even went so far as to say that two grates were missing at the time of her fall. (Exhibit A, p. 93, line 5 through 8.) If that was the case, her judgment that each grate was three and one-half (3-1/2) to four (4) feet in length would create an opening in the floor of seven (7) to eight (8) feet in length with, according to Wagner's affidavit, an undisputed width measurement of two (2) feet, one (1) and 9/16ths inches. (Exhibit B, ¶ 4, attached.)

Plaintiff's affidavit filed in opposition to Durr's Motion for Summary Judgment would lead you to believe that there was a vehicle covering the missing grate at all times during her presence in the Durr paint booth. Contrary to that affidavit, automobile bodies actually began to move after she photographed the Emu feathers depicted in Durr's Exhibit 4. (Attached hereto as Exhibit B, attachment 4, bottom photograph.) From that point in time forward, cars began to move while Plaintiff stood off to the side. In fact, one of the cars that had been previously behind her while photographing the Emu feathers actually came past her. After that car came to a stop, then Plaintiff proceeded to set up her tripod. It was at that point in time that the automobile body began to move and the robots began to paint and she began taking photographs.

(Exhibit A, pp. 71, line 12, through 78, line 8.) Therefore, Plaintiff was present in the paint booth while automobiles were coming from behind her and going in front of her before she actually set up her tripod to take photographs.

### PLAINTIFF'S AFFIDAVIT PRESENTED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CONTRADICTS HER EARLIER SWORN DEPOSITION TESTIMONY

Courts have been very clear with regard to parties submitting subsequent affidavits contradicting prior sworn testimony to avoid entry of summary judgment. As stated in Mantiply v. Mantiply, ___ So.2d ___, 2006 WL 1304936 (Ala.): "[A] party is not allowed to directly contradict prior sworn testimony to avoid the entry of summary judgment." Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala. 1992), citing Doe v. Swift, 577 So.2d 1209, 1214 (Ala. 1990). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony". Id., quoting Robinson v. Hank Roberts Inc., 514 So.2d 958, 961 (Ala. 1987). However, when a party submits a subsequent affidavit merely to clarify his/her answers to ambiguous questions asked by counsel during a deposition or other sworn proceeding or to supply information not necessarily sought by questions asked at the deposition or other prior sworn proceeding, the trial court should consider the subsequent affidavit. See, e.g., Rickard v. Shoals Distrib., Inc., 645 So.2d 1378, 1382-83 (Ala. 1994); and Tittle v. Alabama Power Co., 570 So.2d 601, 606-07 (Ala. 1990)."

In the instant case, counsel for Durr asked Plaintiff unambiguous questions with regard to what, if anything, obstructed her view of the hole into which she stepped while straddling her tripod over that same hole, and she provided the responses that have been cited from her deposition.

Plaintiff's affidavit has not been provided for the purpose of clarifying Plaintiff's answers to ambiguous questions. Plaintiff's responses to unambiguous questions constitute clear answers to unambiguous questions which negates the existence of any genuine issue of material fact. (See also <u>Sheffield v. Choctaw Transport Inc.</u>, 908 So.2d 939 (Ala. 2005), and <u>Auto Owners Insurance Co. v. Abston</u>, 822 So.2d 1187 (Ala. 2001).

## PLAINTIFF'S LEGAL ARGUMENT

Plaintiff's legal argument fails to address the law specifically related to the relationship by and between Durr, invitor, and the Plaintiff, independent contractor. It would appear from Plaintiff's argument that this relationship and the legal duty owed by an invitor to an independent contractor is undisputed. Indirectly, Plaintiff has attempted to now, by way of affidavit following her sworn deposition testimony, argue, in contradiction to her sworn deposition testimony, that the hole into which she fell while straddling her tripod over the same hole was somehow hidden from full view. It is abundantly clear in this case that the Plaintiff failed to exercise ordinary care while performing her professional services as an industrial photographer for Durr, and that she should not prevail in her opposition to Defendant's Motion for Summary Judgment given the existence of an open and obvious hazard which was discoverable and should have been known to the Plaintiff.

## CONCLUSION

Durr did not owe Plaintiff a duty to protect her from dangers of which she should have been aware through the exercise of ordinary care. Because the danger of falling into a hole is open, obvious and self-evident, Plaintiff should have been able to avoid injury. Plaintiff's failure to exercise reasonable care contributed to her injury and bars her recovery.

WHEREFORE, Durr respectfully moves this Court to enter an order granting it a final summary judgment on all of Plaintiff's claims against it.

s/James B. Carlson
James B. Carlson
Christopher A. Bottcher
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:   (205) 930-5100
Fax:   (205) 930-5335
E-mail: jcarlson@sirote.com
E-mail: cbottcher@sirote.com
Attorneys for Defendant
Durr Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas E. Hankins
Hankins & Conklin, P.C.
6812 North Oak Trafficway, Suite 5
Gladstone, MO 64118
Telephone:  816-436-3100
Facsimile:   816-436-8643
E-mail: tomhankinslaw@cs.com
*Attorney for Plaintiff, Anne Marie Hunter*

s/James B. Carlson
Of Counsel